**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | No. 2:17-cr-00432-DCN |
| ) | |
| MELVIN KEITH BRYANT, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| _____ ) | |

The following matter is before the court is on defendant Melvin Keith Bryant's ("Bryant") motion for compassionate release, ECF No. 136. For the reasons set forth below, the court denies the motion.

## I. BACKGROUND

On April 5, 2018, Bryant pled guilty to knowingly, intentionally, and unlawfully possessing with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C §§ 841(a)(1) and 841(b)(1)(A) and 18 U.S.C. § 2. ECF No. 87. On August 7, 2018, the court sentenced him to 120 months of imprisonment. ECF No. 110. On May 26, 2020, Bryant filed his first pro se motion for compassionate release, ECF No. 126, which the court denied on June 11, 2020, ECF No. 128. On October 26, 2021, Bryant filed his second pro se motion for compassionate release. ECF No. 136. The government responded in opposition on January 27, 2022, ECF No. 146. Bryant, via court-appointed counsel, supplemented his motion on March 1, 2022. ECF No. 151. The motion is ripe for the court's review.

1

## II.   STANDARD

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) provides an exception to this general rule where "extraordinary and compelling reasons" warrant a reduction in the defendant's sentence. Courts refer to requests for sentence reductions under this section as motions for "compassionate release."[1] United States v. Ferguson, 55 F.4th 262, 267–68 (4th Cir. 2022); United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022). Prior to the First Step Act of 2018, Pub. L. No 115-391, 132 Stat. 5194 (2018), the law permitted only the Bureau of Prisons ("BOP") to file motions for compassionate release. United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020). Section 603 of the First Step Act amended § 3582(c)(1)(A)(i), authorizing defendants themselves to file requests for compassionate release with the sentencing court after exhausting all available administrative remedies. Id. at 276.

The determination of whether "extraordinary and compelling circumstances" warrant relief is within the discretion of the district court. Hargrove, 30 F.4th at 195. The Fourth Circuit has said that district courts are empowered to "consider any extraordinary and compelling reason for release that defendant might raise." McCoy, 981 F.3d at 284 (quoting United States v. Brooker, 976 F.3d 228, 230 (2d Cir. 2020)) (emphasis in original). If the court finds that such circumstances warrant a reduction in a defendant's sentence, it must "consider[] the factors set forth in [18 U.S.C.] § 3553(a)" to determine whether such a reduction is justified. United States v. High, 997 F.3d 181,

---

[1] The term "compassionate release" is a misnomer since the court may decide to reduce the defendant's custodial sentence instead of eliminating it.

186 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).  A defendant seeking compassionate release "has the burden of establishing that such relief is warranted." United States v. Griggs, 462 F. Supp. 3d 610, 615 (D.S.C. 2020); see also Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 57–58 (2005) ("Absent some reason to believe that Congress intended otherwise, therefore, we will conclude that the burden of persuasion lies where it usually falls, upon the party seeking relief.").  Even after the changes to § 3582(c)(1)(A)(i) promulgated under the First Step Act, the burden remains "exceptionally high."  McCoy, 981 F.3d at 288.

### III.   DISCUSSION

Bryant moves for compassionate release on the grounds that he has a high risk of developing a serious illness from COVID-19 due to his fear of undiagnosed medical conditions and his race.  ECF No. 136 at 14.  In the alternative, Bryant requests that the court consider allowing him to complete his sentence in home confinement.  Id. at 7.  As an initial matter, the court lacks authority to order placement in home confinement because the authority to make placement decisions is vested solely with the BOP. McCarson v. Reherman, 2020 WL 2110770, at *2 (D.S.C. May, 4, 2020) ("The decision of whether to release an inmate to discretionary home confinement rests solely with the [BOP]."); United States v. Colleton, 2020 WL 7352577, at *3 (D.S.C. Dec. 15, 2020).[2]

---

[2] To the extent that the court has the authority to recommend that the BOP place Bryant in home confinement, the court declines to exercise that authority.  The BOP is in a better position than the court to evaluate Bryant's placement alternatives.  The court is confident that the BOP will give serious and thoughtful consideration to Bryant's placement request and therefore declines to make a recommendation.  The court's decision not to make the requested recommendation should not reflect negatively on Bryant's eligibility for home confinement or other placement or on the conditions of such placement.

3

Therefore, the court only considers Barnes's request for compassionate release or reduction in his sentence and ultimately finds that such relief is not warranted.

The court first considers, as it must, whether Bryant has exhausted all administrative remedies or otherwise to meet the threshold requirement of § 3582(c)(1)(A). The court then addresses the substance of Bryant's motion by considering the reasons offered by Bryant for meeting the extraordinary-and-compelling threshold. Finally, the court examines the § 3553(a) factors to consider whether they warrant a reduction in Bryant's sentence, ultimately finding that they do not.

### A. Administrative Exhaustion

As a prerequisite to a motion for compassionate relief, a defendant must exhaust his available administrative remedies. Section 3582(c)(1)(A)(i) provides that a defendant does so when: (1) the "defendant has fully exhausted his administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or (2) the defendant requested compassionate relief from the warden of his facility and thirty days from the warden's receipt of the request has lapsed without response, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i).

Bryant submitted a request for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) to the warden of his BOP facility, the Federal Correctional Institution Yazoo City Low ("FCI Yazoo City Low"), on November 9, 2020. ECF No. 136 at 2. The government does not dispute that Bryant has satisfied his administrative exhaustion requirement, and the court likewise finds that Bryant has exhausted his administrative remedies.

### B. Extraordinary and Compelling Reasons

Bryant argues that his increased risk of developing a serious illness from COVID-19 due to his fear of undiagnosed medical conditions and his race prove an extraordinary and compelling reason for relief. ECF No. 136 at 14. Bryant primarily focuses on the spread of COVID-19 throughout BOP facilities at large, although he does raise some alarming points about the conditions in FCI Yazoo City Low at the height of the pandemic, including the death of a fellow inmate in the shower whose body was not discovered for hours. Id. at 4. Indeed, FCI Yazoo City Low currently reports eight open cases of COVID-19 among inmates, which is among the highest reported number across all BOP facilities. Inmate COVID-19 Data, Federal Bureau of Prisons, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp#lastestCovidData (last visited August 22, 2023).

"Courts in this district and elsewhere have found, particularly at the height of the pandemic, that the COVID-19 pandemic may constitute an extraordinary and compelling reason [] in conjunction with specific risk factors such as age or medical condition." United States v. Cunningham, 2021 WL 2411134, at *2 (D.S.C. June 14, 2021). "In the context of [COVID-19], courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." United States v. Harper, 2020 WL 2046381, at *3 (W.D. Va. Apr. 28, 2020) (citations omitted). "Moreover, a risk of infection, alone, is insufficient to show extraordinary and compelling reasons." United States v. Divers, 2022 WL 1664070 at *3 (W.D. Va. May 25, 2022). While Bryant has shown a particularized risk of contracting COVID-19 at FCI

5

Yazoo City Low, he does not identify any specific risk factors that show he is at an increased risk. Bryant mentions that he has "pre-existing medical conditions." ECF No. 136 at 4. However, he never identifies such conditions, and there is no history of any medical issues listed on his progress report from December 2, 2021. ECF No. 151-1 at 2. Additionally, he does not provide any documentation supporting his assertion that he has pre-existing medical conditions. Since Bryant fails to identify any specific medical conditions that elevate his risk of severe illness should he contract COVID-19, he has failed to provide an extraordinary and compelling circumstance.

Bryant also argues that his race means he has an increased risk of contracting and developing a serious illness from COVID-19. "When assessing compassionate release motions during the pandemic, the Court examines the Centers for Disease Control's ("CDC") list of risk factors for severe COVID-19 complications." Wilson v. United States, 2020 WL 3315995, at *3 (E.D. Va. June 18, 2020). The CDC identifies race and ethnicity as "risk markers for other underlying conditions that affect health." Risk for COVID-19 Infection, Hospitalization, and Death by Race/Ethnicity, Centers for Disease Control, https://stacks.cdc.gov/view/cdc/105453 (last visited July 11, 2023). Therefore, race does not constitute a risk factor, but is instead driven by social determinants that lead to health disparities between groups. "[C]urrent evidence suggests a correlation, not causation" between race and risk of complications from COVID-19. United States v. Dimkpa, 2020 WL 4754901, at *2 (M.D.N.C. Aug. 17, 2020); see also United States v. Kimbrough, 2022 WL 2484548, at *5 (E.D. Va. July 6, 2022) ("Notwithstanding the disproportionate impact, it is also true that a defendant's race does not constitute a risk factor for COVID-19 in the same way an underlying medical condition does." (internal

6

quotation marks omitted)).  As such, medical conditions are a more accurate factor than race when considering Bryant's vulnerability to COVID-19 than his race.  Bryant's race alone is not a sufficient "risk factor" to constitute an extraordinary and compelling reason.

Even if Bryant did show that he has a particularized risk of serious illness in the event of contracting COVID-19, the availability of vaccination "dramatically affect[s] whether an inmate's medical conditions constitute the 'extraordinary and compelling reason' required to further consider compassionate release."  United States v. Sanders, 2021 WL 1428546, at *3 (D. Md. Apr. 15, 2021) (collecting cases).  "For most prisoners, the availability and effectiveness of vaccines make it "impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."  United States v. Brown, 2022 WL 1664474 at *2 (D. Md. May 25, 2022) (quoting United States v. Collins, 2021 WL 4991588, at *3 (W.D. Va. Oct. 27, 2021)).  Further, "persuasive authority suggests that proving a particularized susceptibility to a severe case of COVID-19 in a post-vaccination world requires significantly more than it did in a pre-vaccination world."  United States v. Moore, 2022 WL 453536, at *5 (S.D. W. Va. Feb. 14, 2022) (collecting cases).

The government notes that Bryant was offered the Pfizer-Biotech vaccine in May 2021 but refused it.  ECF No. 146-2 at 2.  Bryant refused the vaccine because "he is concerned [] of his family medical history of diabetes and high blood pressure . . . [and] because he does not know how the vaccine would affect him."  ECF No. 151 at 5.  He also cited religious grounds in his refusal.  Id.  The vaccine has been proven to be highly effective in reducing the spread and symptoms of COVID-19.  While it is certainly

7

Bryant's prerogative to refuse the vaccine, "he cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk." United States v. Vaughn, 2021 WL 5139502, at *4 (E.D. Va. Nov. 3, 2021) (quoting United States v. Jackson, 2021 WL 806366, at *1–2 (D. Minn. Mar. 3, 2021)). Additionally, "[a]llowing federal prisoners to qualify for compassionate release by declining to receive a COVID-19 vaccine, without justification, would discourage prisoners from becoming vaccinated." United States v. Austin, 2021 WL 1137987, *2 (E.D. Mich. Mar. 25, 2021).

As such, the court does not find that Bryant has demonstrated extraordinary and compelling reasons for granting his compassionate release.

### C. Section 3553(a) Factors

Even if Bryant had demonstrated his circumstances were extraordinary and compelling—which he has not—the factors set forth in 18 U.S.C. § 3553(a) weigh against his release. In sentencing a defendant or determining whether a reduction is justified, § 3553(a) requires a court "impose a sentence sufficient, but not greater than necessary" by considering the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for [the offense committed];
> [. . .]

>    (5) any pertinent policy statement;
>    [. . .]
>    (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>    (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The court finds that the § 3553(a) factors weigh against reducing Bryant's sentence to compassionate release or otherwise reducing his sentence. The nature and circumstances of the alleged offense were serious. Bryant's instant conviction is for possession of large quantities of methamphetamine with intent to distribute. Moreover, his criminal history establishes his long-term involvement in dealing drugs. Thus, Bryant's sentence accurately reflects the seriousness of the crime.

The court acknowledges that Bryant has made efforts at rehabilitation while incarcerated: for example, he has participated in many classes, and he has had no disciplinary infractions since entering custody in 2018. ECF No. 151 at 3–4. The court finds that his efforts, while commendable, do not tip the balance of the facts in favor of a reduction in his sentence. Compare United States v. Patterson, 2022 WL 1624982 at *4 (D.S.C. May 23, 2022) (finding that a defendant's rehabilitation efforts through educational courses and programming dealing with health, personal finance, and employment was not enough under the § 3553(a) factors to favor a sentence reduction), and Brown, 2022 WL 1664474 at *3 (holding that completing various courses that will be valuable to the defendant upon release and securing steady employment are not "unusually deep" rehabilitation efforts and noting that the defendant's sentence near the mandatory minimum was not based on a view that he needed significant rehabilitation or training), with United States v. Henriquez, 2021 WL 5771543 at *2 (M.D.N.C. Dec. 6, 2021) (finding that the defendant's "model behavior in prison, his unusually deep efforts

9

at successful rehabilitation, his work ethic, and the support of a significant number of BOP employees with personal knowledge of his family circumstances" favored a sentence reduction).

Overall, the court finds that Bryant's sentence as imposed properly reflects the seriousness of his offenses, promotes respect for the law, and provides adequate deterrence and just punishment. Further, the court declines to provide a recommendation to the BOP that Bryant be placed in home confinement given his lack of risk factors that that would elevate his risk of serious illness in the event of contracting COVID-19.

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** the motion.

**AND IT IS SO ORDERED.**

 

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 23, 2023**
**Charleston, South Carolina**